**People of the State of Illinois, Plaintiff-Appellee, v. John Williams, Defendant-Appellant.**

**Gen. No. 49,556.**

First District, Second Division.

March 9, 1965.

Zoe Kuta, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction of involuntary manslaughter with punishment fixed at two to eight years in the penitentiary.

On April 12, 1963, at about eight o'clock in the evening, defendant, while driving a Yellow Cab south on Princeton Avenue, stopped for a traffic light at the corner of 51st Street in Chicago. He observed a group of young men on the northeast corner, beat-

ing an old man, later identified as one Joseph Bell. The victim of the assault, while lying on the sidewalk, called to defendant for help. When defendant shouted to the boys to leave the victim alone, the boys shouted back insults. When the traffic light turned green, defendant turned west on 51st Street for about one half block, made a U-turn and drove east, back to the same corner. As he was recrossing the intersection his cab was struck by a rock or brick. Defendant stopped his cab near the boys, who at this time were standing on the southeast corner. He fired two shots in their direction. The boys ran. Defendant drove away. One of the boys, Kenneth Boatner, age 16, was killed, the result of a bullet wound in the brain.

A police officer, Thomas O'Malley, had a conversation with an eye witness, one James Henley. Henley gave O'Malley the cab identification number. O'Malley, after checking with the cab garage, traced it to defendant. On April 13, 1964, defendant told the police he knew nothing of the shooting. He later agreed to tell the truth as to the happenings of April 12. He also gave the police his .380 Beretta revolver, which he admitted firing at the boys. In a signed statement, admitted into evidence, he stated:

> . . . noticed the boys who were beating the man up, then standing on the corner, southeast corner, and one of them threw a rock at my cab. I then stopped the cab about twenty feet, opened the cab door on my side and took the gun from my belt in front of my pants and stepped out of the cab with one leg in the cab and the other out. I then held my hand with the gun in it and fired two shots over the roof of the cab in the direction of the boys on the corner.

He did not report the shooting to his superiors at the cab company, nor to the police. He did, however, report the damage inflicted on the cab by the brick to the company. Defendant was indicted. He waived a jury trial.

At the trial, the first witness for the prosecution was Obley Boatner, who testified that the deceased was his son and that he was in good health prior to the event which occurred on April 12. Another witness for the prosecution was James Henley, age 17, the only eye witness called upon to testify by the State. Henley stated on direct examination that he was walking north on the west side of the street at about 8:00 p. m. with one Elight Starling (who did not testify); that the corner was well lighted; that he saw a couple of boys stomping on something and jumping around; that he saw a Yellow Cab pull up to within 6 feet of him; that the driver shouted, telling the boys to stop, and that the boys shouted back insults. He further testified that when the light changed, the cab turned the corner and went west about one half block, made a U-turn, and returned east to the intersection; that the boys had now crossed to the southeast corner; and that the cab was struck by a brick when it returned to the intersection. He further stated that the cab pulled to a stop; that the cab driver got out and shot over the top of his cab twice; that when he looked across the street again all the boys were gone except Kenneth, the deceased, whom he knew prior to this occurrence. He then testified that the cab driver got back in the cab and drove off. On cross-examination, he stated that he did not see Bell stomped, beaten or robbed until after the incident and then he saw him lying on the ground after the boys had gone from the northeast to the southeast corner. His answers on cross-examination

were less positive than the answers he gave on direct examination.

Introduced as evidence at the trial was a stipulation between counsel that a coroner's physician, Dr. Eulugio Tapia, performed an autopsy on the victim, Kenneth Boatner, and that he had found death was caused by a bullet wound in the brain. After some discussion between counsel as to the breadth of the stipulation, it was further stipulated that the .380 caliber bullet taken from the victim's head was marked and identified in a certain way and sent to the firearms section of the police laboratory. A ballistic expert from that section testified that he compared the bullets, which he received from the coroner, with bullets fired by defendant's revolver, and found them to be similar. He concluded that the bullet received from the coroner was fired from defendant's gun.

Defendant's evidence consisted of the testimony of two character witnesses, a stipulation by Joseph Bell that he was assaulted by the gang and defendant's own testimony. Defendant told substantially the same story that he had told the police with one exception. When asked what the boys were doing he stated: "Well, they was—they were just standing—well, they started toward me." He further stated that when he used the weapon he merely intended to scare the boys away.

■ Defendant's theory is that there was sufficient evidence of self-defense submitted, to leave reasonable doubt of his guilt in the mind of the trier of fact. Ill Rev Stats 1963, c 38, § 7–1 of the Criminal Code states as follows:

> A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such others

164

imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.

The committee comments on the aforesaid section, Smith-Hurd Ann Stat 1963, c 38, § 7–1, point out that the law of self-defense has been interpreted in many cases in Illinois, and while they agree in principle, they differ in defining the minimum situations in which the use of deadly force is permissible. In this case we are faced with a similar problem. At the outset, it is settled law that the burden of proof never shifts to the defendant, no matter what his defense may be, and where he pleads self-defense, it is sufficient to acquit him, if his evidence on self-defense, together with all other evidence in the case, creates a reasonable doubt of his guilt. People v. Durand, 307 Ill 611, 139 NE 78 (1923). Section 3–2 of the Criminal Code, Ill Rev Stats 1963, c 38, par 3–2, states that unless the prosecution's evidence raises the issue involving an alleged defense, the defendant, to raise the issue, must present some evidence.

██ Bearing this in mind, we now turn to the elements, which if present, justify the use of force in the defense of a person. These elements are: (1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. There is a further principle involved, when,

165

as in the instant case, the defendant uses deadly force. This principle limits the use of deadly force to those situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony.

It is uncontroverted that a brick was thrown at defendant. Thus, the use of force was threatened against defendant. Furthermore, the State does not contend that defendant was the aggressor. Thus, we can proceed to the third element.

The State contends that the danger to defendant was not imminent. The State reasons that the deceased did not have the present ability of carrying out the alleged threat. This contention is invalid. There were several boys in the gang and they had just thrown a cement block and a brick at defendant's cab, the latter causing substantial damage to the right door (a picture of the damage to the cab was introduced in evidence). The gang was a short distance from defendant. They had the present ability to carry out the threatened use of force. The deceased, identified as part of the gang that damaged the cab, also had the present ability to carry out the threatened harm.

■ ■ The evidence that the gang threw a brick against the cab of defendant was sufficient to show that the threatened force was unlawful as such conduct is both criminal and tortious. Thus, we can proceed to the fifth and sixth elements.

To satisfy the fifth and sixth elements it must be determined whether or not defendant actually believed that a danger existed; that the use of force was necessary to avert the danger; that the kind and amount of force used was necessary; and that such belief was reasonable. A belief is reasonable even if the defendant is mistaken. Defendant had just seen an elderly man beaten up. Furthermore, we again

166

emphasize the fact that the gang, consisting of a number of young men, had just thrown a cement block and a brick at defendant's cab and that they caused substantial damage to the cab. Defendant testified that when he stopped his cab, the gang started to move toward him. There is only one conclusion that can be reached—defendant actually believed that a danger existed.

▮▮▮▮ Next, defendant, if the State failed to do so, had to introduce evidence that he reasonably believed that the use of force was necessary to avert the danger. The State contends that defendant could have driven away from the scene of the incident with his cab and thus the use of force was unnecessary. We disagree with this contention. When a defendant is where he has a lawful right to be, he has a right to stand his ground, and if reasonably apprehensive of injury is justified in taking his assailant's life. People v. Bush, 414 Ill 441, 111 NE2d 326 (1953); People v. Durand, 307 Ill 611, 139 NE 78 (1923). Defendant was under no duty to flee. Furthermore, defendant testified that he had not left the area, because of his desire to help the victim of the assault, Joseph Bell. We will take judicial notice of the fact, that recently there have been a number of publicized assaults and homicides, in which the victims called upon their fellow citizens to render aid. In many instances these fellow citizens refused to get involved. Here we have a man who took it upon himself to get involved, when a victim called for help. In addition to the cases cited above, public policy forbids us to say a person must leave the victim of a brutal beating lie on the street when called upon to render aid. A citizen must feel free to help the victim of an assault. The State alleges that there was no danger to the victim Bell, as the gang of young men had already walked away from Bell and apparently

167

had terminated the beating. They conclude that defendant should have left the scene of the incident. This allegation does not take into consideration the fact that the gang could have returned and further assaulted the victim after defendant left. We must also consider the language in the stipulation that if Bell testified, he would say of defendant, "the only thing I know, *he saved my life.*" (Emphasis supplied.)

Next we must determine the difficult question of whether or not defendant reasonably believed that the kind and amount of force which he used was necessary. Again we stress the principle that belief is reasonable even if the defendant is mistaken. In reviewing the facts we must sustain defendant's contention that he believed the use of a gun was necessary. Defendant had been robbed several weeks before the incident. He was a cab driver approaching a vicious gang of youths. It was night time. Defendant had just observed Bell being beaten up and stomped on. The gang told him to mind his own business. Upon returning to help the victim, Bell, his cab was hit by a brick. The gang of young men were obviously hostile to him because of his intrusion. He had no other weapon. Furthermore, what is really important is defendant's state of mind at the time of the incident. He testified that he was afraid that he would be beat up like Bell. He knew that the gang was aware that, as a cab driver, he had money on his person. Defendant in using the gun reasonably believed that the kind of force used was necessary. Furthermore, defendant testified that he shot up in the air to scare the boys off. The trial judge believed this portion of defendant's testimony. We can only conclude that defendant reasonably believed that both the kind and amount of force used was necessary under the circumstances.

█ Finally, we must determine if the use of deadly force by defendant was justified. Such force is justified if the threatened force would cause death or great bodily harm or is a forcible felony. It is apparent that the throwing of bricks at defendant could have caused death or great bodily harm if defendant was struck by one of them. Defendant was justified in using deadly force to protect his person.

█ In this case we only hold that when a person comes to the aid of another who has been the victim of a battery, said person has the right to use deadly force, if the parties who were the assailants attack him and if the other requirements of self-defense are met. The circumstances of this case present a situation in which we approach the minimum borderline of self-defense. The circumstances are such, however, that the judgment must be reversed.

Judgment reversed.

BURKE, P. J. and BRYANT, J., concur.