**People of the State of Illinois, Plaintiff-Appellee, v. Wesley Johnson, Defendant-Appellant.**

**Gen. No. 53,447.**

First District, First Division.

September 15, 1969.

Robert C. Power, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and L. Michael Getty, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial defendant was found guilty of aggravated battery, and he was sentenced to the penitentiary for a term of three to five years. On appeal he contends that he was not proved guilty beyond a reasonable doubt.

The prosecuting witness, Quiller Ratcliff, testified that on June 28, 1967, at about 5:30 p. m., he went to the apartment of a man he knew as "Sonny Boy," purportedly to see his girl friend of eight months, Bennie Will Shephard, who was Sonny Boy's sister. After entering the apartment, Ratcliff went to the bedroom where Bennie Will was seated. There were other people in the front room, including the defendant, all of whom Ratcliff knew. As he emerged from the bedroom with his arm around the neck of Bennie Will, defendant said, "Don't do that; that's my wife." Ratcliff removed his arm and walked toward the entrance door. When he reached the door, defendant started shooting. Ratcliff was struck by four bullets and fell to the floor. Defendant then stood over Ratcliff and said, "Don't you know I'll kill you?" and shot Ratcliff for the fifth time, in the neck. Ratcliff was in the hospital for five months and was paralyzed from the waist down.

Bennie Will Shephard, as a witness for the State, testified that Ratcliff came into the bedroom, "pulled my arm, burned me with a cigar, used vulgar language and tried to pull me outdoors and took me into the living room." She further said that Alberta Thomas, Dorothy Conner and Willie Williams were in the living room and Wesley Johnson was in the hall. As Ratcliff was pulling her out of the living room, Johnson told Ratcliff to turn her loose. She was turned loose, and she ran back into the bedroom and then heard shots.

Another witness for the State, Willie Williams, testified that Ratcliff came into the living room pulling Bennie Shephard, and Johnson told Ratcliff to turn the woman loose. Johnson then shot Ratcliff four times. As Ratcliff was pleading for his life Williams said to defendant, "Don't kill the man, just like that," after which defendant fired one more shot into Ratcliff.

Defendant testified in his own behalf that Ratcliff came out of the bedroom with his arms around Bennie Shephard like he was choking her, and "I told Ratcliff to turn Bennie loose and he did. Ratcliff went into his pocket and while he was coming out of his pocket, I shot him." He further testified that Ratcliff was facing him when he shot, and "I did not shoot Ratcliff in the back."

Defendant argues that the finding that defendant was guilty of aggravated battery is palpably contrary to the weight of the evidence and is so unreasonable, improbable or unsatisfactory that the reviewing court should substitute its judgment for that of the trial court and reverse the judgment. People v. Eyre, 83 Ill App2d 123, 227 NE 2d 120 (1967).

Defendant asserts that "Ratcliff came to get his woman; she refused; he became angry and threatened Defendant. A man who will beat a woman, burn her and use vulgar language can reasonably be considered dangerous by the man who attempts to protect her." Defendant argues that the conduct of Ratcliff in going into his pocket was consistent with the criminal conduct of Ratcliff after he entered the apartment, and the conviction should not stand upon the sole uncorroborated testimony of an angry man who was proved a liar by the State's witnesses.

Defendant further asserts that his testimony that Ratcliff went into his pocket was an affirmative defense under chapter 38, section 7-1, Ill Rev Stats 1967, and it then became the burden of proof upon the State to prove beyond a reasonable doubt that defendant did not act in self-defense, and the testimony of defendant as to self-defense stands uncontradicted. Defendant cites People v. Williams, 56 Ill App2d 159, 205 NE2d 749 (1965), where it is said (p 165):

"[I]t is settled law that the burden of proof never shifts to the defendant, no matter what his offense may be, and where he pleads self-defense, it is sufficient to acquit him, if his evidence on self-defense, together with all other evidence in the case, creates a reasonable doubt of his guilt."

As to the use of force in defense of person, it is said in chapter 38, section 7–1:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

Also, section 7–14 (Affirmative Defense) provides:

"A defense of justifiable use of force, or of exoneration, based on the provisions of this Article is an affirmative defense."

As we view this record, the only issue is the credibility of the witnesses. In People v. West, 15 Ill2d 171, 154 NE2d 286 (1958), it is said (p 176):

"Where a cause is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded to their testimony is committed to the trial judge, . . . and unless it can be said the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court

below even though evidence regarding material facts is conflicting and irreconcilable."

■ In applying the foregoing guidelines here, we find no basis for substituting our judgment for that of the trial court. It is obvious that defendant's testimony that he fired in self-defense after "Ratcliff went into his pocket and while he was coming out of his pocket" was rejected by the trial court as unworthy of belief. Also, the record shows that he was not justified in the use of force which was "intended or likely to cause death or great bodily harm," because it was not reasonable for him to believe that such force was necessary to protect himself or Bennie Shephard. Ratcliff had released her, and she testified she was back in the bedroom when she heard the shots. Also, defendant's fear of great bodily harm was not a reasonable belief when he fired the fifth shot while Ratcliff was lying on the floor pleading for his life.

In People v. Peery, 81 Ill App2d 372, 225 NE2d 730 (1967), it is said (p 377):

"The right of self-defense does not permit killing in retaliation or revenge, nor does it allow the pursuit and killing of an aggressor after the aggressor abandons the quarrel."

■ In a bench trial in a criminal case, a reviewing court, in view of the opportunities of observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to defendant's guilt. (People v. Woods, 26 Ill2d 582, 585, 187 NE2d 692 (1963).) Applying that test here, we conclude that the trial court was presented with satisfactory and plausible proof on which to find defendant guilty beyond a reasonable doubt of the offense of aggravated battery. People v. Lee, 96 Ill App2d 105, 112, 238 NE2d 63 (1968).

As we find nothing to justify the reversal of defendant's conviction, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.