THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEPHEN PHILLIPS, Defendant-Appellant.

Second District    No. 75-461

Opinion filed May 2, 1977.—Rehearing denied June 10, 1977.

Ralph Ruebner and Joshua Sachs, both of State Appellate Defender's Office, of Elgin, for appellant.

James M. Carr, State's Attorney, of Sycamore (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant herein was indicted on a five count indictment for attempted murder, two counts of aggravated battery and two counts of armed violence. Additionally, two misdemeanor charges were filed against him for unlawful use of weapons and possession of a firearm without the requisite firearms owner identification card. In a negotiated plea defendant pled guilty to one count of aggravated battery and one count of armed violence. In exchange for this the State nolle-prossed all of the charges but the two to which the defendant pled guilty. A sentence of 2-6 years was agreed upon. After being duly admonished, defendant persisted in his plea. At a subsequent date the defendant secured the services of another attorney and upon motion, leave was given him to withdraw his pleas of guilty and the counts of the indictment which had been nolle prossed were reinstated. Subsequently defendant was tried on

the original indictment and found guilty by a jury of possession of firearms which had not been registered; of armed violence and one count of aggravated battery. He was found not guilty of attempted murder and unlawful use of weapons. He was sentenced to 1-3 years on aggravated battery only. He appeals.

On the night of February 17, 1974, one Terry Vonderheide parked his car outside of the Sycamore Hospital about 11 p.m. waiting to pick up his fiance, Laurie Hudson. Laurie Hudson came out of the hospital and got into the car with Vonderheide. The defendant drove his vehicle back and forth past the parked Vonderheide vehicle. After Laurie Hudson had entered the Vonderheide vehicle defendant's car stopped and Vonderheide got out and talked to the defendant. There apparently had been ill will at one time between Vonderheide and Phillips over Laurie Hudson, whom Vonderheide subsequently married. The passenger with the defendant, Jerry Hyde, got out of the car and struck Vonderheide. They became involved in a fight and the defendant drove his car toward Vonderheide. Hyde returned to the Phillips vehicle and entered the same. Hyde then got out of the defendant's car, went back to Vonderheide's car and kicked the door of the Vonderheide vehicle. Vonderheide and Hyde started fighting again and Vonderheide testified that defendant again headed his car toward him. Defendant testified that he was attempting to separate the two. As Vonderheide and Hyde were fighting, Vonderheide had Hyde on the ground. Apparently Hyde grabbed Vonderheide around the legs and Vonderheide hit him until Vonderheide was freed. About this time the defendant, Phillips, took a rifle which he had in his vehicle and shot Vonderheide in the leg. Vonderheide was hospitalized for a period of seven days, the bullet entering his leg and going into his foot. Defendant and Hyde left the scene in defendant's car, drove to a cemetery and disposed of the rifle and a shotgun and cartridges that they had with them. They were shortly thereafter apprehended by the police. Defendant Phillips told the police sergeant that he had aimed at Vonderheide's leg and asked the sergeant to tell Terry and Laurie that he was sorry.

Defendant, in testifying on his own behalf, stated that "it looked to me that Mr. Vonderheide was killing Jerry * * * he was kicking in the head" and that, "I got scared and got the gun out from the floor." He then shot Vonderheide from a distance of 10 to 15 feet after carefully aiming at his leg. He testified that he did not get out of his vehicle before or after the shooting. The defendant also testified that he saw no blood on Hyde and that Hyde did not call out to him for help. The defense attempted to call one Lieutenant Paul Kempf, who was an ROTC rifle instructor, as an expert witness. The State objected to the testimony by Kempf and an offer of proof was made that Kempf would testify that a marksman of

Phillips experience, firing in the manner he had under the conditions prevailing on the night of February 17 would have a range of error of 6-8″ from the point he aimed at. The State's objection to the offer of proof was sustained and the witness was not permitted to testify.

In this appeal the defendant contends the court's refusal to allow Kempf to testify as to the accuracy of the defendant with a rifle was error and that the testimony of the now wife of the victim so prejudiced the defendant that he did not receive a fair trial.

■■ Laurie Hudson, now Laurie Vonderheide, testified upon three different occasions that the defendant tried to hit Vonderheide with his motor vehicle. Objection to these statements was made, the objections were sustained and the jury advised to disregard these statements. The witness was admonished to restrict her statements as to the movements of the car. The defendant himself testified that he backed his car in between Vonderheide and Hyde after they had separated to keep them away from each other so they wouldn't fight. It was admitted that the driving of the vehicle was at a very slow rate of speed. The defendant was not charged with aggravated battery with a motor vehicle but was, in fact, charged with aggravated battery with a deadly weapon, a gun. The jury was advised to disregard Mrs. Vonderheide's testimony that the defendant did, in fact, drive his vehicle toward Vonderheide. We fail to see how Mrs. Vonderheide's statements that the defendant drove toward her husband with his motor vehicle, contradicted by the defendant himself, could constitute reversible error. It is undisputed, as defense counsel has stated in his brief, "he [defendant] aimed carefully at Vonderheide's left leg and fired while Vonderheide was standing kicking Jerry." Under these circumstances we do not find that the wife's testimony was such as to so prejudice the jury that they could not return a fair verdict, especially in view of the testimony of the defendant himself that he deliberately shot the victim.

■■ Although not specifically raised by the defense, it would appear that defendant is attempting to indirectly raise the issue of defense of a person. In *People v. Williams* (1965), 56 Ill. App. 2d 159, 165-66, 205 N.E.2d 749, 752, the court stated the elements which justify the use of force in the defense of a person:

> "These elements are: (1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. There is a further principle involved, when, as in the instant case, the

defendant uses deadly force. This principle limits the use of deadly force to those situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony."

■■ It is to be noted at the outset that the person threatened herein was the aggressor. It is also to be noted that at no time did Hyde call for help from the defendant nor does the force used by Vonderheide indicate that Hyde was in danger of great bodily harm or death. It would appear that this was a fight in which Vonderheide was getting the better of the aggressor Hyde and that the defendant then deliberately shot the victim in the leg. We do not find that defendant has presented evidence which would bring his actions under the affirmative defense of defense of a person to the charge of aggravated battery. The defendant's actions were not justifiable.

■■ We turn to the second contention of the defendant and that is that the army officer should have been allowed to testify as to the accuracy of the defendant with his background and the distance involved under the circumstances on the night in question. We disagree. The purpose of this testimony was obviously as a defense to the charge of attempted murder, as the offer of proof was for the purpose of showing the accuracy of the defendant in his shooting. Whether he was a good shot or a bad shot has nothing to do with the fact that he committed aggravated battery against the victim. The exclusion of this testimony by the army officer, if error at all, was harmless in view of the jury's verdict acquitting the defendant of attempted murder. We therefore affirm.

Judgment affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.