2022 IL App (1st) 191510-U

No. 1-19-1510

Order filed February 14, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 11311 |
| | ) | |
| DUDLEY GRACE, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's aggravated battery conviction is affirmed, where the State presented sufficient evidence to show he did not shoot the victim out of self-defense, the trial court did not improperly shift the burden to him to prove he acted in self-defense, and he failed to show he was prejudiced by trial counsel's failure to cross-examine a State's witness regarding the witness's pending criminal case.

¶ 2    Following a bench trial, defendant Dudley Grace was found guilty of aggravated battery

by discharging a firearm and aggravated discharge of a firearm. The court merged the aggravated

discharge count into the aggravated battery count, and sentenced Grace to six years' imprisonment. On appeal, Grace argues the State failed to prove beyond a reasonable doubt that he did not act in self-defense, the trial court improperly shifted the burden of proof to him to prove that he acted in self-defense, and trial counsel was ineffective for failing to "inquire" into a State witness's pending criminal charges. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Grace was charged by indictment with seven counts of attempted first degree murder (720 ILCS 5/8-4(a); 9-1(a)(1) (West 2016)), one count of aggravated battery by discharging a firearm (720 ILCS 5/12-3.05(e)(1) (West 2016)), and one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2016)), stemming from a June 14, 2017, shooting. Because Grace challenges the sufficiency of the evidence to sustain his conviction, we recount the facts in detail.

¶ 5     At trial, Michael Baker testified that on June 13, 2017, he was friends with Joseph Johnson and had seen Grace "around *** the neighborhood" every few weeks. That evening, near 60th Street and Throop Street, Baker encountered a few people outside Johnson's house. Johnson was standing on his front porch. Grace was in a yard drinking with his "people***," including Lewin Whiteneir and a person nicknamed Boo.[1]

¶ 6     Baker stood in the walkway a few feet away from the porch and told Johnson he had graduated that day. Grace was also speaking with Johnson from "[t]wo yards down." After speaking with Johnson for about five minutes, Baker "heard words," turned around, and saw Grace pointing a black firearm at him and Johnson. Baker heard multiple gunshots and was hit in the

_____

[1] Boo's legal name is not clearly established by the trial transcript.

lower intestine and sides of his groin. Baker fell and attempted to get up and exit the yard through a gate but fell back down. Grace approached "[a] little closer" and shot him again.

¶ 7        Baker was shot by Grace five times: in his lower intestine, leg, anus, and both sides of his groin. As a result of the shooting, Baker was in the hospital for nearly a month and required a colostomy bag for eight months. Baker testified he had never had a firearm before being shot, and he never saw Johnson with a firearm. Baker subsequently identified Grace as the shooter to Detective Joseph Murtaugh, identified him from a photo array on another occasion, and later identified him in a video statement.

¶ 8        On cross-examination, Baker testified that he saw Grace arguing with Johnson. Baker heard Johnson say "this ain't got nothing to do with you" to Grace but did not hear Johnson say "f*** you" or "n***" to Grace or Boo. After Baker was shot, he yelled "you shot me" at Grace, and Grace replied, "I didn't shoot you." Baker lost consciousness and did not recall telling police that he was walking on the sidewalk that night when he heard "several" gunshots and a vehicle drive away.

¶ 9        Johnson testified that he had a pending case against him involving charges of manufacture and delivery of cannabis, and "it was like a misdemeanor of some sort." On June 13, 2017, Johnson saw Grace with Whiteneir and Boo. Johnson was near his own porch and Baker was standing on the walkway facing him. Boo was on Whiteneir's porch three houses down, and Grace was outside the gate in front of Whiteneir's house. Baker told Johnson he just graduated, and Johnson and Boo were arguing. Grace joined the argument, yelled about "something," and got "tough." Johnson told Grace, "[T]his doesn't have anything to do with you."

¶ 10    Grace then retrieved a black handgun from his waistband and shot Baker in the stomach. Baker fell back, "spent off," was shot again, and fell in Johnson's yard. Johnson ran into his house and heard Baker yell, "I've been shot, you shot me," followed by two or three more gunshots. Grace's cousin, Jerrett Land, picked up bullet casings from the ground, and Grace and his cousin entered a vehicle and drove away. Johnson did not have a firearm that night and had never carried a firearm before. Grace was the only person shooting that night.

¶ 11    Johnson identified Grace as the shooter to Murtaugh at the scene and subsequently identified Grace from a photo array. In July 2017, he gave a video statement identifying Grace again.

¶ 12    On cross-examination, Johnson testified that when he was arguing with Boo, Grace got involved and screamed at him. Grace was not trying to calm him down or stop the argument. At about 12:45 a.m., Johnson told Officer Bandola that he was walking with Baker on Throop and heard several gun shots and a vehicle drive away.[2] Johnson did not describe the shooter or the vehicle to Bandola. At about 1:15 a.m., he told Murtaugh that Grace shot at him and Baker, and he believed he was the "intended target." Johnson testified that on the date of the incident, Grace attempted to hit his head with a tricycle. Johnson did not tell this to Murtaugh and ASA Sanchez when he spoke with them.[3] He only told them Grace was "moving as though he was trying to snake me." Johnson also told them that he then walked away and told Baker that Johnson was "okay." When Johnson got to his gate, he heard the first gunshot.

---

[2] The full name of Officer "Bandola" is not contained in the transcript of the trial proceedings, and the transcript of Johnson's testimony indicates that "Bandola" was a phonetic spelling of the officer's name.

[3] The first name of ASA Sanchez does not appear in the trial transcript.

¶ 13    Johnson did not know police recovered shell casings or a potato chip bag with "dope baggies" inside it from his yard. Asked regarding a scale that was recovered from his mailbox, Johnson stated people in his area regularly use other people's yards to "hide stuff." He denied that he ever smoked or sold cannabis in front of his house.

¶ 14    Murtaugh testified that he arrived at the scene shortly after 1 a.m. and spoke with Johnson, who identified the shooter as "[s]omeone named Dougie." Murtaugh observed two "clean looking" shell casings on the sidewalk two houses away from Johnson's house, blood on a "parkway" and in Johnson's yard, and a shell casing and live round in the bushes near Johnson's house. The casing and round in the bushes appeared "weathered" as if they had been there for a while. Murtaugh also saw bicycles, children's toys, and a plastic BB gun in the yard.

¶ 15    On cross-examination, Murtaugh confirmed there was a bag, containing baggies, in front of Johnson's house, but he directed that it should not be collected because this was "not a drug case" and the objects were "garbage" as the bags were empty. Murtaugh confirmed that during his initial interview at 1:15 a.m. with Johnson, Johnson said he walked away from Grace on the sidewalk to his residence when he heard a gunshot. When Murtaugh interviewed Johnson on July 8, 2017, Johnson never told him the incident was a "drive-by shooting," although the original case report reflected Johnson told officers there was a "drive-by."

¶ 16    On redirect examination, Murtaugh confirmed that on the scene, Johnson immediately identified Grace as the shooter, and he never identified anyone else as the shooter. There was also no evidence that Johnson had or used a firearm.

¶ 17    Chicago police evidence technician Kenneth LeFlore testified that on June 14, 2017, at about 2:20 a.m., he processed the scene of the shooting. He observed two cartridge casings on the

parkway, a "medallion" in blood on the front walkway, and a cartridge casing and a live round in a garden basin near Johnson's house. The State presented photographs of the items, and LeFlore confirmed that the live round and fired cartridge casing appeared oxidized as though they had been there for "some time." Leflore testified that the two cartridge casings located on the parkway appeared "[p]ossibly" newly fired, "fairly new." The oxidized live round, oxidized cartridge casing, and two cartridge casings on the parkway were all inventoried.

¶ 18    On cross-examination, LeFlore testified that he did not collect any "other contraband" found on the scene, as it was not "part of the crime scene" they were processing. LeFlore also stated that the "contraband" in question contained no drugs, so there was no reason to collect it.

¶ 19    The State stipulated that if called, an expert in firearms and ballistics identification would testify that the two inventoried cartridge casings found on the parkway were fired from the same firearm, while the cartridge casing found in the garden basin was fired from a separate firearm. The three casings all had headstamps indicating they were "9 mm Luger" casings. The parties also stipulated that on April 23, 2017, Grace went to a shooting range and purchased a 9-millimeter Luger firearm and a box of 9-millimeter ammunition. On April 30, 2017, he returned to the range and purchased two more boxes of 9-millimeter ammunition.

¶ 20    Grace testified on his own behalf. He stated that on the afternoon of June 13, 2017, he drove to Whiteneir's house on 60th and Throop, and "[a] lot" of people were on the street. Grace drank alcohol and smoked cannabis. At about 10 p.m., someone asked to use Grace's vehicle. Therefore, Grace removed his firearm and a magazine from his vehicle, inserted the magazine into the firearm, and placed the firearm in his front waistband. The person drove away with his vehicle, returned, and parked the vehicle in front of Whiteneir's house. Meanwhile, an argument between

Johnson and Boo grew "more serious," as the two paced back and forth and moved towards each other. People attempted to separate them and calm them down.

¶ 21    At about midnight, Grace stood in front of the house between Johnson's house and Whiteneir's house. Johnson was outside his own gate. Boo moved towards the house Grace was in front of and argued with Johnson. Johnson entered his house and stepped back out onto his front step. Grace told Boo and Johnson to calm down. Johnson told him the argument had nothing to do with him, and stated, "Ain't nobody scared of y'all n***s. Y'all ain't the only one with guns."

¶ 22    Grace talked with Land. He then heard one gunshot, crouched down, heard a second gunshot, and saw Johnson with a firearm. Grace backed up towards his vehicle and fired four shots towards the ground. He could not tell where his firearm was pointed and was not trying to shoot anyone. He was afraid, did not know what to do, and thought he or Land could have been killed. He entered his vehicle and heard police sirens as he drove away.

¶ 23    On July 7, 2017, the police called Grace and told him his vehicle may have been used in a drive-by shooting. He met with police, who handcuffed him and took him to the police station. There, he spoke with Murtaugh, who asked him about June 13 and 14, but never confronted him about shooting Baker. Grace did not learn he was charged with shooting Baker until he went to bond court two hours afterwards.

¶ 24    Grace testified that he did not know Baker, never saw Baker in Johnson's front yard, and had no intent to harm him. He had no "beef" with Johnson and had previously investigated getting Johnson a job at his workplace. Grace had a firearm owner's identification (FOID) card and a weapon and had taken a class for obtaining a concealed carry license but never applied to receive the card. Every Sunday, he went to the firing range and fired 150 rounds.

¶ 25    On cross-examination, Grace explained that when the first shot was fired, he was on the sidewalk, leaning on the gate to the yard next door to Johnson's house, and facing the street. Johnson was standing on his front doorstep, and he fired into the crowd of people in front of the house where Grace was standing outside. Grace did not recall Murtaugh telling him he was involved in a shooting on the street, but Murtaugh "implied" there was a drive-by shooting. Grace told Murtaugh that on June 13, 2017, he went straight home after work and does not "hang out" on 60th and Throop.

¶ 26    On redirect examination, Grace testified when he spoke with Murtaugh, he was under the impression his vehicle was mistakenly identified as being involved in a drive-by shooting.

¶ 27    Whiteneir testified he had lived on the 6000 block of South Throop his whole life. He lived two houses down from Johnson and met Grace through his close friend Land. On June 13, 2017, Whiteneir, Land, and Grace spent the day in Whiteneir's yard. Eventually Boo joined them, and Johnson exited his house and approached them. Johnson and Boo argued "all day" because Boo knew someone was "supposed" to rob Johnson.

¶ 28    At about midnight, Johnson and Boo were still arguing, and Grace attempted to calm them down. Johnson exited his yard, approached and spoke with Boo, and then returned to his porch. Johnson stood in his doorway with his hand by his waistband. Whiteneir saw what appeared to be the "back end" of a firearm in Johnson's hand. Johnson stated, "[Y]'all not the only one that got guns. Nobody scared of you b*** a***s." At that point, Grace was in the yard next door to Whiteneir's house, Boo was about four or five feet from Grace, and there were about 10 or 15 people outside in the general area.

¶ 29    Whiteneir entered his house and heard two gunshots, a pause, and then four rapid gunshots. He took cover on the ground and stepped outside. He heard Baker scream, "I am hit," but he had not seen Baker before entering his house and did not know from where Baker had come. Grace walked backwards towards his vehicle, entered, and drove away. The police arrived about three to five minutes later. The police did not ask Whiteneir any questions. Whiteneir did not see Land pick up any shell casings from the sidewalk or street.

¶ 30    On cross-examination, Whiteneir testified that he never saw Johnson or Boo with an actual firearm, but he saw Johnson with an object that looked like a firearm and "figure[d]" Johnson was holding a firearm due to the tone of his voice. When Johnson was standing in the doorway holding the object, his thumb was hooked inside his waistband, and the rest of his fingers were exposed. Whiteneir, Land, and Boo did not have firearms that night. Whiteneir also never saw Grace with a firearm and did not know Grace owned one.

¶ 31    Murtaugh testified he believed he asked Baker whether Johnson fired a weapon from his porch, but the question and Baker's response were not documented in Murtaugh's reports. He confirmed Johnson told him that, when Grace fired his weapon, the weapon stopped firing and "malfunctioned" and Grace "cleared it" and fired more shots.

¶ 32    On cross-examination, Murtaugh testified that he could not interview Baker until June 29 due to the seriousness of his condition. Baker did not indicate that he or Johnson had a weapon or raised one at Grace.

¶ 33    On redirect examination, Murtaugh testified that he did not find any bullets in front of the house next door to Johnson's house or near where Baker was lying in the grass. Murtaugh did not see any shell casings near Baker, and no newer looking shell cases in Johnson's yard.

¶ 34    Grace stipulated that on March 15, 2014, Johnson was identified as having asked a Chicago Transit Authority bus driver if he was "looking at Johnson's girl" and threatened to "beat his ass."

¶ 35    Additionally, Grace stipulated that on July 7, 2017, police officers arrested him and advised him that his vehicle had been used in a drive-by shooting. He was placed in the back seat of a squad vehicle and cooperated with police. Grace also stipulated that Karen Brunt was arrested on June 19, 2017, and a 9-millimeter Luger caliber automatic pistol was recovered from her vehicle. If called, a forensic scientist would testify that the recovered pistol fired the older, oxidized shell casing recovered from the 6400 block of South Throop.

¶ 36    The trial court found Grace guilty of aggravated battery and aggravated discharge of a firearm and acquitted him of attempted first degree murder.

¶ 37    In announcing its findings, the court found there were "some issues" with the testimony of Baker and Johnson, but Baker "clearly did not want to be involved with this at all." The court found that the evidence of Johnson's apparent drug dealing was a "side show," and the case "has nothing to do with drugs." The court then noted that the witnesses presented by both the State and defense "basically corroborate each other." Namely, the testimony from both parties showed Johnson was in an argument with Boo, and Grace "involved himself in the argument, whether he was trying to be a peacemaker or whatever action he was trying to do." Baker testified that he did not know the shooter's name, which was consistent with Grace's testimony that he did not know Baker.

¶ 38    The court recounted that Grace had raised a theory of self-defense, and there was evidence of two shell casings though Grace purportedly shot four times. However, it observed there was no evidence that anyone other than Grace fired a weapon that day. The court found Whiteneir's

testimony was "a little bit suspect," and Grace's testimony was "beyond underwhelming." While Grace's testimony that he acted in self-defense "had a semblance of logic," he nonetheless lied to a detective that he was not present at the scene of the shooting. The court did not believe Grace was confused as to what shooting he was being interviewed about. The court stated, "I don't find that this was, that there was even a showing of self-defense in this case."

¶ 39   The court concluded that, while the State's case was "lacking in parts," "the totality of all the evidence" showed Grace fired a weapon multiple times and caused injury to Baker. The court "did not accept the theory of self-defense." It also concluded the State did not establish the requisite mental state for attempted first degree murder. Soon after, while discussing the State's motion to revoke bond, the court stated:

> "Now, I want to be clear here, I made my findings of fact, the State had the burden of proof throughout this trial, and at no point in time did [defendant] ever have a burden. It's always been the State's burden of proof and based upon the totality of all the evidence presented, the State met [its] burden of proof beyond a reasonable doubt as to [the aggravated battery and aggravated discharge of a firearm counts]."

¶ 40   Grace filed a motion for new trial, arguing the State failed to prove him guilty beyond a reasonable doubt, and the physical evidence was consistent with his affirmative defense of self-defense. At a hearing on the motion, Grace's trial counsel added that Grace was prejudiced by the investigation of the incident, as there was no investigation into the evidence of drug dealing at the scene, and "valuable evidence" could have been found but was lost. Counsel also argued "[W]e know Joseph Johnson is a drug dealer because he had a pending drug case, delivery of a controlled substance, pending at the time he testified."

¶ 41    The court denied Grace's motion, reiterating its finding that "this is not the drug case." The court repeated that the State proved its case beyond a reasonable doubt, and "the bottom line is I did not believe [defendant]" or his "witnesses' contention of self-defense." Nonetheless, the court stated, "it does not matter in the end because it's not [defendant] who proves himself innocent." Rather, it was the State's burden to prove defendant guilty, and the State "did prove that it was not self-defense."

¶ 42    The court merged Grace's aggravated discharge count into his aggravated battery by discharge of a firearm count and sentenced him to six years' imprisonment for that offense.

¶ 43                                    II. ANALYSIS

¶ 44    On appeal, Grace argues that the State failed to prove beyond a reasonable doubt that he did not shoot Baker in self-defense, as the evidence showed that Johnson threatened Grace with a firearm and shot at him, and Grace returned fire out of self-defense. He argues that he and Whiteneir gave "credible" testimony that was not contradicted by any physical evidence.[4] The State responds that the evidence showed Johnson was unarmed and Grace was the only shooter.

¶ 45    "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When

---

[4] We note that while defendant challenges the sufficiency of the evidence for both aggravated battery and aggravated discharge of a firearm, he was only sentenced on the aggravated battery conviction. " '[I]t is axiomatic that there is no final judgment in a criminal case until the imposition of sentence, and, in the absence of a final judgment, an appeal cannot be entertained.' " *People v. Neely*, 2013 IL App (1st) 120043, ¶ 14 (quoting *People v. Flores*, 128 Ill. 2d 66, 95 (1989)). As such, this court will only consider defendant's challenge to his aggravated battery conviction.

reviewing the sufficiency of the evidence at trial, we are required to view all evidence in the light most favorable to the prosecution and determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 46　We will not retry the defendant when reviewing a challenge to the sufficiency of the evidence at trial. *People v. Nere*, 2018 IL 122566, ¶ 69. Rather, it is the role of the trier of fact "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). The trier of fact need not "disregard inferences which flow normally from the evidence before it," or "search out all possible explanations consistent with innocence and raise those explanations to a level of reasonable doubt." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. We "must allow all reasonable inferences from the record in favor of the prosecution" (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), and will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt" (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 47　To establish guilt of aggravated battery based on discharge of a firearm, the State had to show that Grace discharged a firearm and caused injury to Baker. 720 ILCS 5/12-3.05(e)(1) (West 2016). Grace does not dispute that he discharged a firearm at Baker, causing injury. Rather, he asserted at trial, and now asserts on appeal, that he was justified in shooting Baker because he was acting in self-defense. Specifically, he claims that Johnson initiated the shooting and fired at him and Land, and Grace returned fire out of a belief that he needed to defend himself and Land.

¶ 48    Under section 7-1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/7-1(a) (West 2016)), a person "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Once a defendant raises the affirmative defense of self-defense, "the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *People v. Gray*, 2017 IL 120958, ¶ 50. The elements of self-defense are as follows:

> "(1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable." *People v. Lee*, 213 Ill. 2d 218, 225 (2004).

If the State negates any one of these elements, the defendant's claim of self-defense necessarily fails. *Id.* Whether the testimony and evidence support a self-defense theory is to be determined by the trier of fact. *People v. Bennett*, 2017 IL App (1st) 151619, ¶ 33.

¶ 49    Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could find the State negated Grace's claim that he shot Baker in self-defense. The State presented testimony that on the day of the shooting, Johnson and a person nicknamed Boo had been arguing, and Grace had attempted to intervene in the argument. That evening, Baker visited Johnson outside Johnson's house and told Johnson he had graduated. As they spoke, Grace shot

Baker multiple times, and Baker attempted to escape and fell to the ground. Grace then walked closer to Baker and continued to shoot him while he was on the ground. Consistently, Baker received gunshot wounds both in the front and rear sides of his body: in the lower intestine, groin, leg, and anus. There was no evidence that Baker was armed. *People v. Spiller*, 2016 IL App (1st) 133389, ¶¶ 4, 27 (rejecting the defendant's self-defense theory where testimony reflected that the defendant pursued and shot the victim five times, and the victim was not observed with a firearm). After shooting Baker, Grace entered his vehicle, Land picked up shell casings left on the ground, and Grace drove away. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 59 (evidence of the defendant's flight and discarding of the weapon was competent circumstantial evidence refuting the defendant's self-defense theory).

¶ 50     The State's evidence also reflected that Grace was the only person armed that night. While Grace testified that Johnson fired a weapon, other witnesses, including Johnson and Baker, testified that Grace was the only person with a weapon on the night in question. Defense witness Whiteneir testified that Johnson carried an object that appeared to be the "back end" of a firearm but did not actually observe Johnson with or fire a weapon. *Id.* ¶ 57 (the force used by the defendant was unreasonable when the testimony of both parties established that the victim never "pulled out" a firearm, and the defendant only stated that the victim was "brandishing" a firearm). In addition, the physical evidence presented by the State supported the inference that Johnson did not fire a weapon where new expended shell casings were recovered near the area where Grace shot from, and the ballistic evidence near where Johnson stood, appeared weathered as though it had been there for some time.

¶ 51    While the court noted there were credibility issues with both the State's and Grace's witnesses, it ultimately found that the testimony presented by both parties established that Johnson and Boo had been arguing and that Grace intervened and fired a weapon, though no one else at the scene was armed or had threatened to shoot him. See *People v. Hayes*, 2011 IL App (1st) 100127, ¶¶ 36-37 (finding the State met its burden in negating defendant's self-defense theory, where the witnesses never wavered in their statement that defendant fired the first shot, and the trier of fact "was aware of the inconsistencies and of the witnesses' possible motivations for testifying"). As mentioned, it is the duty of the trial court, and not this court, to resolve conflicts in the evidence and determine the credibility of witnesses, and we will not overturn the trial court's decision on these matters simply because defendant claims a witness was not credible. *Williams*, 193 Ill. 2d at 338. We find that the trial evidence was sufficient to establish that Grace did not act in self-defense when he repeatedly shot Baker as Baker attempted to escape. Accordingly, Grace's self-defense theory fails, as the State's evidence negated multiple elements of his claim of self-defense, *i.e.*, that unlawful force was threatened against him, he was not the aggressor, the danger of harm was imminent, and his use of force was necessary. *Lee*, 213 Ill. 2d at 225.

¶ 52    Grace next argues that the trial court improperly shifted the burden to him to prove his self-defense theory when the court stated, "I don't find that this was, that there was even a showing of self-defense in this case."

¶ 53    Grace acknowledges that he failed to preserve this issue for review, as he never raised an objection to the court's statement at trial or in a posttrial motion. See *People v. Reese*, 2017 IL 120011, ¶ 60 ("To preserve an issue for review, a defendant must object at trial and raise the

alleged error in a written posttrial motion."). Nonetheless, he asserts that we may consider the merits of the issue under the plain error doctrine.

¶ 54    Under the plain-error doctrine, a reviewing court may address a forfeited claim where a "clear or obvious error occurred," and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.* ¶ 69. The defendant carries the burden of persuasion under both prongs of the rule. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009).

¶ 55    Grace argues that both prongs of the plain-error doctrine apply, as (1) the evidence amounted to a "credibility contest" and therefore was closely balanced and (2) the error undermining the burden of proof eroded judicial integrity. The initial step in a plain error analysis, however, is to determine whether a clear or obvious error occurred at trial. *People v. Sebby*, 2017 IL 119445, ¶ 49. Here, we find no error occurred, as the record shows the trial court never shifted the burden on Grace to prove his self-defense theory.

¶ 56    Indeed, as we have noted, where a defendant raises an affirmative defense of self-defense, it is the burden of the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. *Gray*, 2017 IL 120958, ¶ 50. Grace claims the trial court improperly placed the burden on him to prove his self-defense theory by stating there was no "showing" of self-defense. However, Grace received a bench trial, and we must "presume that a trial judge knows and follows the law unless the record demonstrates otherwise." *People v. Jordan*, 218 Ill. 2d 255, 269 (2006).

We will not reverse the decision of the circuit court based on an isolated statement. *People v. Weston*, 271 Ill. App. 3d 604, 616 (1995).

¶ 57    Moreover, the trial court is "free to comment on the implausibility of the defense's theories, as long as it is clear from the record that the trial court applied the proper burden of proof." (Internal quotation marks omitted.) *People v. Schuit*, 2016 IL App (1st) 150312, ¶ 113 (modified upon denial of rehearing). The court's efforts to "test, support, or sustain the defense's theories cannot be viewed as improperly diluting the State's burden of proof or improperly shifting that burden to the defendant." (Internal quotation marks omitted.) *Id.*

¶ 58    Here, the trial court extensively detailed its factual findings, describing the testimony presented by the State, the credibility issues presented by the witnesses on both sides, and the facts that were undisputed by both parties' witnesses. The court concluded, based on "the totality of all the evidence," it found Grace fired a weapon multiple times and injured Baker, and it "did not accept the theory of self-defense." While the court stated there was not "a showing of self-defense," it soon after emphasized that "the State had the burden of proof throughout this trial, and at no point in time did [defendant] ever have a burden." See *People v. Howery*, 178 Ill. 2d 1, 31-33 (1997) (trial court did not shift burden of proving self-defense onto the defendant when it stated it reviewed all the trial testimony and exhibits, including testimony "presented by the defendant," and "there is no evidence of any kind to support a verdict of not guilty").

¶ 59    At a hearing on Grace's posttrial motion, the court again emphasized that Grace did not have to prove himself innocent, and the State "did prove that it was not self-defense." We will not reverse the trial court's judgment based on a single isolated statement, as Grace urges, where the record overwhelmingly shows the trial court never shifted the burden to Grace to prove self-

defense. *Weston*, 271 Ill. App. 3d at 616. Accordingly, no plain error occurred, and we must honor Grace's procedural default of this issue. *People v. Johnson*, 208 Ill. 2d 53, 64 (2005).

¶ 60    Finally, Grace argues that his trial counsel was ineffective for failing to cross-examine Johnson regarding his pending criminal charges for manufacture and delivery of cannabis. Grace claims trial counsel failed to make any inquiry into the amount of cannabis Johnson was charged with manufacturing and delivering, the class of his offense, the range of his sentence, and whether the State made any promises to Johnson that would impact his motive to testify. Grace contends evidence regarding Johnson's pending case would have bolstered the trial evidence regarding Johnson's drug dealing, impeached Johnson's testimony, and would have been highly relevant to whether Johnson had a bias or interest in testifying favorably for the State.

¶ 61    The sixth amendment to the United States Constitution guarantees those accused of crime the right to the effective assistance of counsel. *People v. Cole*, 2017 IL 120997, ¶ 22. To prevail on an ineffective assistance claim, a defendant must establish that (1) "counsel's performance was objectively unreasonable under prevailing professional norms," and (2) "there is a 'reasonable probability' that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 62    To satisfy the deficiency prong, the defendant must show that counsel's performance was so deficient that counsel "was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Easley*, 192 Ill. 2d 307, 317 (2000). In doing so, "the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *Id.* To satisfy the prejudice prong, the defendant must show "actual

prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81. "[A] 'reasonable probability' is defined as a showing sufficient to undermine confidence in the outcome, rendering the result unreliable or fundamentally unfair." *Id.*

¶ 63    While a defendant must satisfy both prongs of the *Strickland* test (*People v. Jackson*, 2020 IL 124112, ¶ 90), we may resolve an ineffective assistance claim based on the prejudice prong without considering whether counsel's performance was deficient (*People v. Pulliam*, 206 Ill. 2d 218, 249 (2002)). Proceeding directly to the prejudice prong, we find Grace has not demonstrated a reasonable probability that the trial outcome would have been different had his counsel cross-examined Johnson regarding the charges pending against him.

¶ 64    Grace claims that had trial counsel inquired regarding Johnson's pending case, counsel would have been able to impeach Johnson with it, as the pending charges would have established Johnson had a motive to testify against him in exchange for leniency at sentencing. However, there is no indication in the record on appeal that Johnson in fact received promises in exchange for his testimony against Grace. Thus, any inference in this regard is pure speculation, and it is not clear that any testimony favorable to Grace would have been elicited had counsel cross-examined Johnson regarding whether he received anything in exchange for testifying. See *Patterson*, 2014 IL 115102, ¶ 81 (satisfying the prejudice prong requires a showing of actual prejudice, not merely speculation that defendant may have been prejudiced).

¶ 65    Grace supports his assertion with an appellate court fourth district case summary included in the appendix to his brief, which demonstrates that in July 2019, the State nol-prossed four charges against Johnson: manufacture and delivery of cannabis, possession of cannabis, possession of drug paraphernalia, and what appears to be possession of alcohol in a motor vehicle. However,

"[t]he inclusion of evidence in an appendix is an improper supplementation of the record with information *dehors* the record." *People v. Wright*, 2013 IL App (1st) 103232, ¶ 38.

¶ 66     We note that this court may take judicial notice of public records and other judicial proceedings. *People v. Jimerson*, 404 Ill. App. 3d 621, 634 (2010). Yet even if we were to take judicial notice of the case summary in Grace's appendix, the summary still does not indicate that Johnson testified in Grace's case in exchange for leniency in his own pending case. Thus, Grace's claim of prejudice would still amount to improper speculation, insufficient to demonstrate he suffered prejudice from counsel's alleged deficient performance. See *Patterson*, 2014 IL 115102, ¶ 81.

¶ 67     Further, any evidence elicited on cross-examination regarding the particulars of the drug offenses underlying Johnson's pending case would not have affected the outcome of Grace's trial. Grace presented a theory at trial that he fired his weapon out of self-defense, as Johnson carried a firearm and had shot in his direction. However, as we have observed, the evidence showed that Johnson was not armed. Grace does not explain how evidence regarding Johnson's drug dealing would have affected the trial court's conclusion that Grace, and not Johnson, initiated the shooting. Moreover, evidence that Johnson's house was used for selling drugs had already been presented at trial via, *inter alia*, testimony that a bag full of empty baggies was found on the ground outside Johnson's house and a measuring scale was found in Johnson's mailbox. As the trial court expressly found, the evidence regarding Johnson's alleged drug dealing was irrelevant to the question of whether Grace shot Baker without legal justification.

¶ 68     Accordingly, Grace was not prejudiced by counsel's failure to cross-examine Johnson regarding his drug-related case. Any resulting evidence leading to an inference that Johnson was

a drug dealer would not have been material to the question of whether Grace acted in self-defense. See *People v. Walls*, 323 Ill. App. 3d 436, 446 (2001) (the defendant was not prejudiced by counsel's failure to subpoena information that was not material to the defendant's guilt of the crime charged). Johnson's supposed bias or motive to testify was based on improper speculation. *People v. Johnson*, 2021 IL 126291, ¶ 55 ("Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." (Internal quotation marks omitted.)). As Grace has not demonstrated prejudice from counsel's alleged deficient performance, his ineffective assistance of counsel claim fails.

¶ 69                                    CONCLUSION

¶ 70    Baker's testimony, corroborated by Johnson's testimony, gives a rational trier of fact an adequate basis for finding that Johnson did not have a firearm when Grace fired a gun on June 13, 2017. The evidence sufficiently supports the court's finding that Grace lacked justification for firing his gun. Because Grace did not establish a reasonable probability that he would have achieved a better result if his attorney had presented more complete evidence concerning the nature of the charges pending against Johnson, Grace has not shown ineffective assistance of counsel. Accordingly, we affirm the trial court's judgment.

¶ 71    Affirmed.