2026 IL App (1st) 231645-U

No. 1-23-1645

Order filed February 27, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 3410 |
| | ) | |
| SANAN ABUDAYEH, | ) | Honorable |
| | ) | John F. Lyke, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Wilson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's conviction for intentional first degree murder is affirmed where the evidence was sufficient to disprove his claim of self-defense. Defendant's attempted armed robbery conviction is also affirmed where video evidence shows defendant holding a firearm towards the victim while searching the victim's pockets.

¶ 2   Defendant Sanan Abudayeh appeals his conviction for first degree murder and one count

of attempted armed robbery (720 ILCS 5/8-4, 720 ILCS 5/18-2(a)(2) (West 2018)). On appeal,

defendant argues that the State failed to prove beyond a reasonable doubt that he was not acting in

self-defense. Alternatively, defendant contends that his first degree murder conviction should be reduced to second-degree murder, because no rational trier of fact could have found that mitigating factors were not present. He further contends that the evidence was insufficient to prove beyond a reasonable doubt that he committed attempted armed robbery. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The State proceeded at trial on three counts of first degree murder of Adrien Campos (720 ILCS 5/9-1(a)(1), (2), (3) (West 2018)) and one count of attempted armed robbery of Campos (count XI) (720 ILCS 5/8-4, 720 ILCS 5/18-2(a)(2) (West 2018)). The murder counts alleged that defendant, without lawful justification, shot and killed Campos intentionally (count VII), knowing that the act created a strong probability of death or great bodily harm (count VIII), and during the commission of a forcible felony predicated on attempted armed robbery with a firearm (count IX). Each murder count alleged defendant personally discharged the firearm that proximately caused death.

¶ 5      Defendant provided notice to the State that he would be asserting the affirmative defense of self-defense at trial.

¶ 6      At trial, Marvin Hernandez testified that on the evening of January 27, 2019, he and defendant planned to purchase two ounces of cannabis for around $200 from Campos, with whom Hernandez had previously done business. Justin Gamino, who passed away before trial, picked up Hernandez and defendant from their homes and eventually drove them to meet Campos at the 5500 block of South Kedvale Avenue in Chicago. When they arrived at the meeting location, Campos approached the vehicle and spoke to Hernandez. Campos wanted to charge more than the agreed

upon price for the cannabis, so Hernandez, Gamino and defendant left and drove around for a few hours looking for someone with better prices.

¶ 7    At around 2:20 a.m. on January 28, 2019, they again contacted Campos and met him at the same location. Campos still refused to lower his price, so Hernandez, Gamino and defendant again left and drove around looking for a cheaper price. Eventually, Hernandez contacted Campos, and they settled on a price. At some point, Hernandez gave his phone to defendant, who spoke to Campos and made a separate deal to also purchase pills. Hernandez did not listen to every detail of the conversation but knew defendant wanted to buy Xanax. At around 2:40 a.m., Hernandez, Gamino and defendant arrived at the same location to again meet with Campos. Hernandez gave defendant money for the deal. He was not aware that defendant intended to use fake money for the transaction.

¶ 8    Hernandez and Gamino remained inside the vehicle while defendant exited and stood on the opposite side of the street about 40 feet away. While seated in the vehicle, Hernandez heard gunshots coming from defendant's direction. Hernandez looked in that direction, where he saw defendant standing over Campos who was lying flat on the ground. Defendant was going through Campos's pockets. Campos did not appear to be moving. Defendant returned to the vehicle holding his side and appeared to have a silver or chrome firearm in his waistband. Hernandez could not recall if defendant said anything at that time. Hernandez did not ask what happened because he was "scared" and "nervous" as defendant "just killed somebody else." Gamino then dropped Hernandez and defendant off.

¶ 9    The State published an enhanced surveillance video of the incident, People's Exhibit No. 7, which was entered into evidence without objection. The original surveillance footage was

enhanced to zoom in at the upper left corner from 2:46:40 to 2:52:00 and add a shadow and highlight filter to make the image clearer. Hernandez identified defendant and Gamino's vehicle in the video, as well as still photographs taken from the video showing defendant standing over Campos at the scene of the shooting.

¶ 10    The enhanced video shows defendant exiting a vehicle and standing by a garage. It is snowing heavily, and defendant slips on the snowy pavement. Campos approaches defendant, who hands Campos something. Campos turns away from defendant and holds the item up towards the streetlight using both hands. Campos lowers his hands and as he turns back to face defendant, defendant points a firearm at his head. Campos pushes defendant's hand holding the firearm away from his head and defendant grabs his arm.

¶ 11    Defendant and Campos struggle while facing each other. Campos moves backwards and defendant moves in sync with him while still pointing the firearm at Campos's head and holding his arm. Campos's free arm swings at defendant's torso. Defendant releases Campos's arm, steps back, aims his firearm at Campos, and Campos falls face first to the ground. Defendant then leans over Campos while pointing his firearm at him and appears to discharge the firearm. Defendant rolls Campos over onto his back and Campos's right arm flops to the side, away from his body. Defendant straddles Campos and rummages through his jacket pockets, then unzips Campos's jacket and searches his inner pockets. Campos does not move while defendant searches him. The entire encounter lasts about 54 seconds, including about 20 seconds in which defendant spent searching Campos.

¶ 12    On cross-examination, Hernandez testified that he gave defendant about $110. Hernandez denied giving defendant fake money.

¶ 13    Chicago police officer Antony Loburgio testified that he and his partner, Ryan Gubricky, responded to a call of shots fired near the 5500 block of South Kedvale on the morning of January 28, 2019. At the scene, he saw the victim lying on his back with blood nearby. The victim had been shot but was alive, gasping for air, and related "it was a drug deal gone bad." On the ground near the victim, Loburgio observed a ziplock bag full of marijuana, a fixed-blade knife, "what appeared to be United States currency," and a second knife.

¶ 14    Loburgio's body-worn camera footage was published and entered into evidence without objection, People's Exhibit No. 26. The video shows Campos lying on his back in the snow with blood visible on the snow near him. Campos's belongings are scattered on the ground near his body. The left side of Campos's body appears immobilized, and he only moves his right arm when speaking to police.

¶ 15    Chicago police sergeant Jennifer Cunningham testified that she processed the crime scene as an evidence technician. She photographed and inventoried two knives—one with a switch blade and one with a fixed blade—along with counterfeit money, suspected cannabis, and a cell phone.

¶ 16    The State entered stipulations that Adriana Segovia, a forensic pathologist, performed Campos's autopsy and determined that his death was a homicide caused by multiple gunshot wounds. Her findings indicated that Campos had been shot at least five times, with two of the gunshot entrance wounds located on the back of his head.

¶ 17    Defendant testified that in the early morning hours of January 28, 2019, he was riding around in a vehicle with Hernandez and Gamino to make a drug deal. Hernandez contacted Campos to make the deal. When they met with Campos, Hernandez unsuccessfully tried to negotiate a better price. Hernandez, Gamino, and defendant left to find a better deal but eventually

returned to Campos. Hernandez bargained with Campos and reached a deal for "[w]eed and pills" for $600. They went to Hernandez's home to retrieve more "[f]ake money" and then returned to meet Campos.

¶ 18    Defendant exited the vehicle to make the transaction. He handed the fake money to Campos, who held it to the light with both hands to check if it was real. As he did so, defendant observed a knife handle in Campos's right hand near the bottom of his palm. After checking the money, Campos told defendant that "this s*** f*** fake, I'm going to f*** kill you." As Campos was turning around, "[defendant] pulled out [his] gun and told him no you're not." He grabbed Campos's hand holding the knife with his left hand while holding the firearm in his right hand. Defendant pointed the firearm at Campos and "told him chill out, chill out." Campos "obviously refused."

¶ 19    Using his free hand, Campos pulled out a knife with a fixed blade and swung at defendant, stabbing him in the left arm and left lung. Defendant testified that he did not shoot Campos right away, but he did so after Campos stabbed him because he "was afraid [he] was going to die." Defendant did not recall how many times he discharged the firearm as it "happened so quick," but believed it was only once. When he was stabbed, defendant did not think he had any other option but to discharge his firearm.

¶ 20    Defendant explained that he checked Campos's pockets to make sure he did not have any other weapons. Defendant did not feel comfortable turning his back on Campos while he was still alive on the ground and did not want to slip and fall on the snow. While checking Campos's pockets, he saw cannabis, a phone, and pills on his waistband. Defendant did not take anything or retrieve the fake money. He never intended to rob Campos but only planned to "defraud" him.

Defendant had the firearm with him for protection, and it was his first time carrying a firearm. He had never previously purchased drugs with Hernandez or from Campos.

¶ 21 On cross-examination, defendant confirmed that Campos held the folded knife in his hand while holding the money up to the light and only a "little bit" of the knife was "sticking out." Defendant did not move, run away, or call out to Hernandez or Gamino after seeing the knife. Defendant only drew his firearm after Campos verbally threatened that he was "going to f*** kill [him]." Defendant confirmed that he did not see the knife's blade in Campos's hand.

¶ 22 Defendant did not step away and "level" the firearm at Campos but grabbed Campos's hand holding the knife because he was "trying to not let the situation escalate any further." Defendant held his firearm to Campos's head, grabbed Campos's hand holding the knife, and told him to "chill out." While they struggled, Campos pulled out a second knife with about a 10-inch blade from his left pocket with his left hand and swung it at defendant, stabbing him in his left side. Defendant discharged his firearm after being stabbed a second time.

¶ 23 Defendant denied shooting Campos five times, or after he fell to the ground. Defendant confirmed he rolled Campos onto his back, doing so because he was scared that Campos might have other weapons. Defendant did not recall if he kicked the knife Campos had used away. He returned to the vehicle and told Hernandez and Gamino that he had been stabbed. Defendant confirmed that he did not tell them that he was defending himself. Defendant later went to the hospital for treatment where he learned he had a partially collapsed left lung. He did not tell medical personnel the truth about how he was stabbed.

¶ 24 Defendant had previously purchased cannabis but not pills. Defendant had not carried a firearm with him for the prior purchases because he knew the individuals. Hernandez did all the

negotiating with Campos. Defendant did "the deal" with Campos because his money was also involved.

¶ 25     On redirect examination, defendant explained that when he saw the knife's handle in Campos's hand, he did not know that the blade was folded, "but it was little so it had to be folded." Defendant did not shoot Campos after he saw that knife in his hand because defendant was "trying to give him the benefit of the doubt." Defendant also did not run when Campos verbally threatened him because "[defendant] had a gun" and was afraid of turning his back to Campos. Defendant confirmed that he shot Campos after he was stabbed.

¶ 26     The court found defendant guilty of all three counts of first degree murder and of attempted armed robbery. The court stated that defendant "tried to be slick" and thought he had "two suckers." It explained that defendant was going to keep the real money from Hernandez and get the drugs for free. The court found the surveillance video "crystal clear" as to what was happening. Specifically, defendant raised the firearm as Campos examined the money and appeared to have "zero fear of that victim." The court noted that defendant "did try to finesse [it]" but it was not a "sucker" and not "born last night." The court found that the State "proved beyond not only a reasonable doubt, any doubt" that defendant committed first degree murder and that he personally discharged the firearm.

¶ 27     Regarding the attempted armed robbery charge, the court noted that defendant reached inside Campos's pockets while displaying his firearm, and his intent in searching Campos's pockets was to steal the Xanax pills. The court found defendant "very skilled and adept at rolling that body over" and searched Campos quickly. The court explained that defendant "took giant steps toward the commission of armed robbery, not little steps."

¶ 28    As to defendant's self-defense claim, the court found that defendant was the "initial aggressor, was the intermediate aggressor, and was the final aggressor." The court further found that defendant never attempted to escape the danger from Campos's knife, pursued Campos "like a lion pursues his prey," demonstrated no desire to withdraw, and Campos was never the aggressor. The court found second degree murder inapplicable.

¶ 29    The court merged the three murder counts and sentenced defendant to 20 years in prison plus a 25-year firearm enhancement, for a sentence of 40 years in prison for murder. It did not specify on which count defendant was sentenced, and its sentencing order reflects sentences on each murder count. The court imposed a concurrent sentence of 5 years in prison for the attempted armed robbery count, for a total of 50 years in prison.

¶ 30                                    II. ANALYSIS

¶ 31    On appeal, defendant argues that the State failed to disprove beyond a reasonable doubt that he acted in self-defense.

¶ 32    In considering a challenge to the sufficiency of the evidence in a self-defense claim, this court examines whether, after viewing the evidence in a light most favorable to the State, "any rational trier of fact could have found beyond a reasonable doubt that the defendant did not act in self-defense." *People v. Gray*, 2017 IL 120958, ¶ 51. The trier of fact's role is "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). We will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or credibility of the witnesses. *Gray*, 2017 IL 120958, ¶ 35. A conviction will not be

overturned "unless the evidence is so unreasonable, improbable, or unsatisfactory" that reasonable doubt exists as to the defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 33 A defendant commits first degree murder when he kills another person without lawful justification. 720 ILCS 5/9-1 (West 2018). Defendant does not contest that he shot and killed Campos. Rather, he maintains, as he did at trial, that he did so in self-defense. Self-defense is legal justification for first degree murder. *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 54.

¶ 34 Once a defendant raises self-defense, the State bears the burden of proving, in addition to the elements of the charged offense, that the defendant's actions were not justified beyond a reasonable doubt. *People v. Mujkovic*, 2022 IL App (1st) 200717, ¶ 26. The elements of self-defense are: (1) unlawful force was threatened against the defendant; (2) the defendant was not the aggressor; (3) the danger of harm was imminent; (4) the use of force was necessary; (5) the defendant actually and subjectively believed a danger existed that required the use of the force applied; and (6) the defendant's beliefs were objectively reasonable. *People v. Boston*, 2018 IL App (1st) 140369, ¶ 95. If the State negates any of those elements, the defendant's self-defense claim fails. *Gray*, 2017 IL 120958, ¶ 50. Self-defense raises a question of fact for the trier of fact to determine. *People v. Bennett*, 2017 IL App (1st) 151619, ¶ 33. The trier of fact "need not accept a defendant's claim of self-defense." *People v. Young*, 347 Ill. App. 3d 909, 920 (2004).

¶ 35 After viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could determine the State disproved that defendant acted in self-defense. Specifically, defendant's theory of self-defense fails because the State disproved that he was not the aggressor.

¶ 36 An individual "may be the initial aggressor in a conflict if *** he initially provoked the use of force against himself." (Internal quotation marks omitted.) *People v. Cruz*, 2021 IL App (1st)

190132, ¶ 48. Whether the defendant was the "initial aggressor" in an altercation is a factual question, with deference given to the finder of fact. *Id.* ¶ 44. As long as the finder of fact's determination that the defendant was the initial aggressor was rational, "it is a finding we must uphold." *Id.* ¶ 60. "[B]randishing a weapon is one way for a defendant to become the initial aggressor in a conflict." *Id.* ¶ 55.

¶ 37    Here, the only evidence that defendant was not the initial aggressor was his own self-serving testimony, which the trial court, as finder of fact, was not required to believe. See *Young*, 347 Ill. App. 3d at 920 (the trier of fact is not required to believe the defendant's version of events and could consider other factors casting doubt on its probability). Defendant testified that he observed a folded blade knife in Campos's hand and Campos verbally threatened to kill him for giving him fake money. Defendant pulled out his firearm, pointed it at Campos's head as Campos turned around, grabbed his arm, and told Campos to "chill out." Defendant explained that he did not attempt to exit or deescalate the situation after Campos threatened him because he "got a gun." Instead, defendant physically engaged with Campos, explaining that he did not want "the situation [to] escalate further." Defendant testified that Campos then used his free hand to retrieve another knife and stabbed him in his left arm and side. Defendant was afraid he was going to die and shot Campos to try to "get him off" of defendant.

¶ 38    Defendant did not testify, nor does the surveillance video show, that Campos brandished the folded blade knife at defendant in any manner, much less in a threatening manner. In contrast, the surveillance video clearly shows defendant brandishing a firearm, pointing it at Campos's head after Campos examined the tendered fake money, and an ensuing struggle. Defendant continuously pointed the firearm at Campos's head while holding Campos's arm and moved in sync with

Campos as Campos moved backwards, creating the reasonable inference that Campos was attempting to escape from defendant. Campos ultimately stabs defendant, who then releases Campos and repeatedly shoots Campos, even as Campos laid face down and motionless on the ground. The forensic evidence showed that Campos sustained multiple gunshot wounds, including entrance wounds to the back of his head. The trial court, as finder of fact, found that defendant was the initial aggressor. The trial court's factual finding was rational and one which we must give deference to in light of the evidence presented at trial. *Cruz*, 2021 IL App (1st) 190132, ¶ 60. The State therefore disproved defendant's claim of self-defense.

¶ 39    Defendant contends that, even if he was the initial aggressor at the moment he pointed his firearm at Campos, his claim that he shot Campos in self-defense was still valid as Campos had stabbed him.

¶ 40    An individual who "initially provokes the use of force against himself" is not justified in the use of force unless "[s]uch force is so great that he reasonably believed that he was in imminent danger of death or great bodily harm, and that he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the assailant." 720 ILCS 5/7-4(c) (1) (West 2018).

¶ 41    Here, only defendant's testimony supports his theory of self-defense. He argues that the trial court did not credit his testimony that he shot Campos in self-defense fearing for his life after Campos had stabbed him. However, the trial court, as trier of fact, was not required to believe defendant's testimony. See *People v. Batchelor*, 171 Ill. 2d 367, 376-77 (1996) ("Where a defendant's statement is contradicted by the facts and circumstantial evidence, the trier of fact need not believe it, even though other witnesses do not contradict the statement directly."). The court

found that Campos was never the aggressor. Rather, it found that defendant pursued Campos "like a lion pursues his prey," and defendant did not demonstrate any desire to withdraw from the conflict. We do not weigh evidence or make credibility determinations. See *Gray*, 2017 IL 120958, ¶ 51 (the finder of fact assesses the credibility of witnesses, determines the weight to give their testimony, and draws inferences from the evidence in deciding a self-defense claim). The trial court found defendant's version of events incredible, and we defer to that determination. *People v. Sauls*, 2022 IL 127732, ¶ 52.

¶ 42 Moreover, the trial court was similarly not required to believe defendant's testimony that Campos threatened to kill him while holding the folded blade knife. *Young*, 347 Ill. App. 3d at 920. Even if the court were to believe his testimony, any danger to defendant at the time of the initial confrontation, when the knife blade was folded, was not imminent, and Campos only issued a verbal threat. See *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 63 (noting the "longstanding rule" that mere threats of injury or death are insufficient to justify self-defense). Defendant made no attempt to escape from Campos, and the trial court was not required to believe his explanation as to why he did not do so.

¶ 43 Further, defendant escalated the situation by continuing his aggression towards Campos, even as Campos tried to escape by moving backwards. See 720 ILCS 5/7-4(c)(2) (West 2018) (an initial aggressor may raise self-defense where they have withdrawn from the conflict, and the other party continued the conflict). Defendant could not have been surprised by Campos's show of force in stabbing him under the circumstances defendant created. Thus, the exception under which an initial aggressor may still claim self-defense does not apply and defendant's self-defense claim fails.

¶ 44   In the alternative, defendant argues that his first degree murder conviction should be reduced to second degree murder based on his subjective but unreasonable belief in the need for self-defense.

¶ 45   To reduce a charge from first to second degree murder, the defendant bears the burden of proving by a preponderance of the evidence that one of the following mitigating factors was present at the time of killing: he either (1) acted under a sudden and intense passion resulting from serious provocation by the individual killed or (2) had an unreasonable belief in the need for self-defense, which is referred to as imperfect self-defense. 720 ILCS 5/9-2(a)(1)-(2), (c) (West 2018); *People v. Jeffries*, 164 Ill. 2d 104, 112-13 (1995). The relevant mitigating factor is not an element of the offense but lessens the culpability and severity of the punishment. *People v. Hawkins*, 296 Ill. App. 3d 830, 836 (1998).

¶ 46   Once a defendant has proven that a mitigating factor exists, the State must disprove that factor beyond a reasonable doubt. *People v. Castellano*, 2015 IL App (1st) 133874, ¶ 154. The presence of a mitigating factor is a question of fact, and this court's task on review is not to reweigh the evidence and substitute our judgment for that of the finder of fact. *People v. Castejon*, 2025 IL App (1st) 221918, ¶ 18. When a defendant contends that his first degree murder conviction should be reduced to second degree murder, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the mitigating factors were not present." (Internal quotation marks omitted.) *People v. Bennett*, 2017 IL App (1st) 151619, ¶ 43.

¶ 47   Imperfect self-defense "occurs when there is sufficient evidence that the defendant believed he was acting in self-defense, but that belief is objectively unreasonable." *Jeffries*, 164

Ill. 2d at 113. Necessarily, second-degree murder is not available where a defendant fails to establish by a preponderance of the evidence each of the first five elements of self-defense. *Castellano*, 2015 IL App (1st) 133874, ¶ 149. As already discussed, the State's evidence disproved at least one of the first five elements of self-defense, that defendant was the initial aggressor. Thus, defendant cannot meet his burden of showing by a preponderance of the evidence the existence of each of the first five elements of self-defense. We therefore reject his argument that his conviction should be reduced to second degree murder in the basis of imperfect self-defense.

¶ 48    Defendant also contends his first degree murder conviction should be reduced to second degree murder because he shot Campos acting under a sudden and intense passion resulting from the serious provocation of Campos stabbing him twice and injuring him. Serious provocation is defined as "conduct sufficient to excite an intense passion in a reasonable person." 720 ILCS 5/9-2(b) (West 2018). Serious provocation includes substantial physical injury or assault. *People v. Haynes*, 2024 IL 129795, ¶ 36.

¶ 49    The State argues that defendant raising the mitigating factor of sudden and intense passion on appeal contradicts his theory of the case presented throughout the trial proceedings that he acted in self-defense. The State contends that defendant could not have established the requisite mental state to act under a sudden and intension passion because he unambiguously advanced a theory of self-defense at trial.

¶ 50    Here, defendant's trial testimony does not support a finding that he acted in response to a sudden and intense passion from the substantial physical injury that Campos caused by stabbing him. Defendant consistently testified that he shot Campos because he feared for his life after Campos stabbed and threatened him. He further testified that he searched Campos's pockets to

ensure he did not have more weapons and feared turning his back to Campos. Defendant did not testify to feeling a sudden and intense passion required for serious provocation. Rather, defendant maintains that he only acted to defend himself. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 92 (noting that "if the defendant's actions were merely defensive or motivated by fear and a desire to escape the victim, a finding of second degree murder based on provocation is not appropriate"). A rational trier of fact could conclude that defendant shot Campos deliberately, and not in response to provocation from Campos. As such, we find no basis to reduce defendant's conviction from first-degree murder to second-degree murder.

¶ 51    Finally, defendant challenges his convictions for felony murder and attempted armed robbery, asserting the State failed to prove beyond a reasonable doubt that he intended to rob Campos or that he took a substantial step towards the commission of an armed robbery.

¶ 52    As an initial matter, the State argues that defendant cannot appeal the felony murder guilty finding as it was merged with the intentional murder guilty finding and no sentence was imposed for felony murder. We agree.

¶ 53    The trial court found defendant guilty of the intentional murder of Campos (count VII), knowing/strong probability murder of Campos (count VIII), and felony murder of Campos premised commission of the attempted armed robbery of Campos (count IX). The court merged the murder counts and imposed a 45-year sentence but did not specify on which murder count, and the sentencing order sets forth a sentence for each count. However, where, as here, the defendant has been convicted of multiple murder counts of a single victim, sentence is imposed on the most serious offense. See *People v. Bishop*, 2014 IL App (1st) 113335, ¶ 11. Necessarily therefore, the sentence here was imposed on intentional first degree murder, the most serious of the three murder

offenses. *Id.* ("Among charges of intentional, knowing [strong probability], and felony murder, intentional murder constitutes the most serious offense.").

¶ 54    Our supreme court has held that a defendant may only appeal offenses on which a sentence has been imposed. See *People v. Jones*, 2019 IL App (1st) 170478, ¶ 24 (noting that this court has "no jurisdiction to decide the validity of unsentenced offenses"). Thus, as no sentence was imposed on the felony murder count premised on attempted armed robbery, we cannot review the sufficiency of the evidence supporting the guilty finding on that count. We therefore only review the sufficiency of the evidence for the attempted armed robbery conviction, on which defendant was sentenced.

¶ 55    As stated, we review a challenge to the sufficiency of the evidence to determine whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Hutt*, 2023 IL 128170, ¶ 19.

¶ 56    An individual commits attempted armed robbery when, with the intent to commit an armed robbery, he acted in a manner that constitutes a substantial step towards the commission of an armed robbery. 720 ILCS 5/8-4(a), 720 ILCS 5/18-2(a)(2) (West 2018). As charged here, an individual commits armed robbery when he knowingly takes property from another individual or presence of another individual, by use of force or threatening the imminent use of force, while armed with a firearm. 720 ILCS 5/18-1(a), 18-2(a)(2) (West 2018). Attempt is a specific intent offense. *People v. Guy*, 2025 IL 129967, ¶ 33. Defendant challenges the evidence showing that he intended to commit an armed robbery or that he took a substantial step towards the commission of an armed robbery.

¶ 57    The State may use circumstantial evidence to establish intent as the intent to commit a criminal act is rarely shown through direct evidence. *People v. Lee*, 2015 IL App (1st) 132059, ¶ 53. Whether a defendant had the requisite intent to commit a criminal offense raises a question of fact for the trier of fact. *People v. Grayer*, 2023 IL 128871, ¶ 26. Intent may be inferred from the defendant's conduct and the surrounding circumstances. *People v. Terrell*, 99 Ill. 2d 427, 432 (1984).

¶ 58    A substantial step toward the commission of an offense is determined based on the unique facts and circumstances of each case. *People v. Cole*, 2023 IL App (1st) 220174, ¶ 86. Whether the defendant performed a substantial step towards committing a crime is a question of fact for the finder of fact. *Id.* The commission of a substantial step "may be the very first step beyond mere preparation" and "is not required to be the last proximate act to actual commission of a crime." (Internal quotation marks and citations omitted.) *Id.* ¶ 87.

¶ 59    Viewing the evidence in the light most favorable to the State, as we must, we conclude that a rational trier of fact could find defendant guilty of attempted armed robbery. Defendant met with Campos to purchase the drugs using fake money and armed with a loaded firearm. The surveillance video shows defendant pointing the firearm at Campos as he was lying face down on the ground, rolling Campos over onto his back, and thoroughly searching the inside of Campos's pockets during the planned drug purchase transaction. A rational trier of fact can reasonably infer from defendant's actions and the surrounding circumstances his specific intent to commit the armed robbery of Campos and that he took a substantial step towards the commission of that offense.

¶ 60    Nevertheless, defendant contends any claim that he had the specific intent to commit armed robbery of Campos and took a substantial step to commit that offense is "conjecture." He argues

that the State presented no evidence showing his plan to forcibly rob Campos, demand his property, and take anything from Campos. Rather, he contends the evidence only shows that he intended to use fake money to make the drug purchase, used force in self-defense, and searched Campos's pockets to check for weapons.

¶ 61     Defendant essentially is asking this court to reweigh his testimony and the evidence in his favor, which we cannot do. See *Jones*, 2019 IL App (1st) 170478, ¶ 25 (this court will not substitute its judgment for that of the trier of fact on issues of credibility or the weight of the evidence). The determination of intent and the commission of a substantial step are factual findings for the trier of fact. *Cole*, 2023 IL App (1st) 220174, ¶ 86. The trial court questioned defendant's credibility and explicitly found that defendant had the intent to commit armed robbery and took substantial steps in the commission of the offense.

¶ 62     Contrary to defendant's contention, the State was not required to show that he made demands and took any property from Campos as the offense was one of attempt and not the actual commission of armed robbery. See *id.* ¶ 87 (noting the commission of a substantial step does not require the last immediate act to the actual commission of the offense). Although defendant raised an alternative plausibility for his conduct in searching Campos's pockets, the trial court could and did rely on "reasonable inferences to conclude that no other scenario was as likely as the straightforward conclusion" that defendant intended to take property from Campos while armed with a firearm. *People v. Richardson*, 104 Ill. 2d 8, 12-13 (1984). The evidence, when viewed in the light most favorable to the State, was not "so unreasonable, improbable, or unsatisfactory" that reasonable doubt exists as to defendant's guilt of attempted armed robbery. *Wright*, 2017 IL 119561, ¶ 70. As such, we find that the conviction for attempted armed robbery should stand.

¶ 63                                    III. CONCLUSION

¶ 64      For the forgoing reasons, we affirm the findings of the circuit court of Cook County.

¶ 65      Affirmed.